FILED
2017 Dec-13 AM 11:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| v. } | Case No.: 5:17-cr-00383-RDP-JHE-1 |
| } | |
| **NATHAN RICHARD VINEYARD,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

In this case, the court is asked to resolve a dispute about the meaning of a federal statutory term and compare certain anatomical terms which Congress and the Tennessee Legislature have used to describe people's private parts. Defendant Nathan Vineyard contends he was not required to register as a sex offender because the Tennessee sexual battery statute he was convicted under in 2012 contained a categorically broader definition of "sexual contact" than that provided by the Sex Offender Registration and Notification Act ("SORNA"). To assess his argument, the court must examine the provisions of two statutes and look to the language of anatomy.

This matter is before the court on Defendant's Motion to Dismiss Indictment, or in the Alternative, Motion in Limine to Exclude Evidence of Conviction under Tenn. Code § 39-13-505(a)(3). (Doc. # 11). The Motion (Doc. # 11) has been fully briefed. (Docs. # 11, 12, 14). On November 29, 2017, the Government filed a Supplement to Response in Opposition to Defendant's Motion to Dismiss, to which Defendant replied on December 1, 2017. (Docs. # 15, 17). For the reasons explained below, the Motion (Doc. # 11) is due to be denied.

## I. Background

In March 2012, Defendant Nathan Richard Vineyard ("Defendant" or "Vineyard") was charged with rape and false imprisonment in Campbell County, Tennessee. (Doc. # 12 at p. 2). On May 7, 2012, Vineyard pleaded guilty to sexual battery in violation of Tenn. Code § 39-13-505 and aggravated assault in violation of Tenn. Code § 39-13-102. (Doc. # 15-2 at p. 4). Vineyard was sentenced to a total effective sentence of eight years imprisonment. (Doc. # 12 at p. 2). On September 5, 2017, a grand jury charged Vineyard with failing to register as a sex offender under SORNA, 34 U.S.C. § 20911, *et seq.*, in violation of 18 U.S.C. § 2250(a). (Doc. # 1). According to the Indictment, between July 8, 2017 and August 9, 2017, Vineyard was required to register under SORNA, traveled in interstate commerce, and knowingly failed to register and update his registration as required by SORNA. (*Id.*).

On November 3, 2017, Defendant moved to dismiss his indictment, arguing that his conviction for Tennessee sexual battery is not a "sex offense" under 34 U.S.C. § 20911(5)(A) and, therefore, he is not required to register as a sex offender under SORNA. (Doc. # 11). The court evaluates the merits of Defendant's arguments, in turn.

## II. Law and Discussion

Under SORNA, a sex offender must comply with certain registration requirements, and failure to do so is a criminal offense. *See* 34 U.S.C. § 20913; 18 U.S.C. § 2250(a). A "sex offender" is "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). A "sex offense" includes "a criminal offense that has an element involving a sexual act or *sexual contact* with another." *Id.* at § 20911(5)(A)(i) (emphasis added).

### A. The Categorical Approach Applies Here

Because SORNA requires courts to compare a defendant's prior conviction to criteria set forth in a federal statute, the court must first determine whether to consider the prior conviction under the categorical, modified categorical, or circumstance-specific approach. *See, e.g.*, *United States v. Berry*, 814 F.3d 192, 195 (4th Cir. 2016); *United States v. White*, 782 F.3d 1118, 1130-31 (10th Cir. 2015). Under the categorical approach, the court examines only the elements of the crime of conviction and does not consider the facts underlying the conviction. *See Taylor v. United States*, 495 U.S. 575, 588-89 (1990). And, if the statute under which the defendant was convicted "sweeps more broadly than the generic crime," the underlying conviction does not categorically match the generic crime. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). The modified categorical approach allows a court to use the categorical approach when a defendant was convicted of violating a divisible statute by permitting "a court to determine which statutory phrase was the basis for the conviction." *Id.* at 2284-85. Under the circumstance-specific approach, the court focuses on the facts, rather than the elements, of the prior conviction. *See Nijhawan v. Holder*, 557 U.S. 29, 34 (2009). When a federal statute refers to a generic crime, the categorical approach applies; however, when a federal statute refers to the specific way in which an offender committed the crime on a specific occasion, the circumstance-specific crime applies. *See id.*

In this case, both parties agree that the categorical approach applies (Docs. # 11, 12, 14), and the court agrees that the phrase "element involving a sexual act or sexual contact with another" found in 34 U.S.C. § 20911(5)(A)(i) signals a categorical analysis. *See Johnson v. United States*, 135 S. Ct. 2551, 2562 (2015) ("This emphasis on convictions indicates that 'Congress intended the sentencing court to look only to the fact that the defendant had been

3

convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.'"); *see also United States v. Price*, 777 F.3d 700, 708 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2911 (2015) ("Congress expressly referenced the 'elements' of the offense in subsection (5)(A)(i), providing that one such element must involve 'a sexual act or sexual contact with another.'"); *United States v. Gonzalez-Medina*, 757 F.3d 425, 430 (5th Cir. 2014) ("The definition's focus on the "element[s]" of the predicate offense strongly suggests that a categorical approach applies to (5)(A)(i)."); *United States v. George*, 223 F. Supp. 3d 159, 165 (S.D.N.Y. 2016) (holding that "the categorical approach applies to § 16911(5)(A)(i) of SORNA"). As such, the court compares the elements of Vineyard's Tennessee sexual battery offense to SORNA's definition of "sex offense" and does not consider the facts underlying Vineyard's sexual battery conviction. *See, e.g.*, *Descamps*, 133 S. Ct. at 2283; *Taylor*, 495 U.S. at 588-89.

### B. The Court Considers the Plain Meaning of "Sexual Contact," Not the Definition of "Sexual Contact" Found in Title 18

The parties' principal disagreement relates to the federal definition of "sexual contact" as used in SORNA. *See* 34 U.S.C. § 20911(5)(A)(i); *see also* (Docs. # 11, 12, 14). The Government argues that sexual battery under Tenn. Code § 39-13-505 is a "sex offense" under 34 U.S.C. § 20911(5)(A)(i), making Defendant a "sex offender" under § 20911(1) and, thus, subject to the SORNA registration requirements. (Doc. # 12). Conversely, Defendant maintains that sexual battery under Tennessee law does not qualify as a "sex offense" under SORNA because the Tennessee definition of "sexual contact" is broader than the federal definition of that term in Title 18. (Docs. # 11, 14).

Originally, Defendant raised a question as to whether sexual battery under Tennessee law qualifies as a "sex offense" under SORNA because sections 39-13-501 and 39-13-505(a) of the

Tennessee Code define "sexual battery" to include the intentional "touching of semen and vaginal fluid, which are not body parts." (Doc. # 14 at p. 5). As the Government pointed out in its Supplement to Response in Opposition to Defendant's Motion to Dismiss, however, "semen" and "vaginal fluid" were added to Tennessee's definition of "sexual contact" in 2013, which was *after* Defendant pleaded guilty to sexual battery. *See* Tenn. Code § 39-13-501(2) (2013). (*See also* Doc. # 15-4). Thus, as both parties agree, Defendant's argument regarding the inclusion of "semen" and "vaginal fluid" in Tennessee's definition of "sexual contact" is off the mark. (Docs. # 15, 17). Nonetheless, Defendant continues to urge that Tennessee's definition of "sexual contact" is categorically broader than SORNA's use of that term because the former definition includes contact with the "primary genital area." (Doc. # 17).

Section 39-13-505(a) of the Tennessee Code defines "sexual battery" as

> unlawful *sexual contact* with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: (1) Force or coercion is used to accomplish the act; (2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent; (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or (4) The sexual contact is accomplished by fraud.

(emphasis added). "Sexual contact" under Tennessee law "includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code § 39-13-501(6). As of the date of Vineyard's conviction (in 2012), Tennessee law defined "intimate parts" to include "the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* at § 39-13-501(2) (2012).

5

SORNA does not define "sexual contact." Defendant argues that in defining "sexual contact" under SORNA, the court should look to 18 U.S.C. § 2246(3). That subsection defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."[1] (Doc. # 11 at p. 3, 6-7). More specifically, Defendant argues that the court should consider 18 U.S.C. § 2246(3) and 34 U.S.C. § 20911(5)(A)(i) *in pari materia* and, in doing so, incorporate § 2246(3)'s definition of "sexual contact" into SORNA. (Doc. # 14 at p. 3-4). This argument fails for two main reasons. First, the court must apply the plain meaning of a statute unless the "language is ambiguous or leads to absurd results." *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995). As explained below, the plain, everyday meaning of the language of this provision of SORNA is inconsistent with Defendant's argument. Second, § 20911 is filled with cross-references to Title 18 and incorporates a number of definitions from Title 18. *See, e.g.*, 34 U.S.C. § 20911(3)(A), (4)(A), (5)(A)(iii), (7)(F), (8). Section 20911(5)(A)(iii) even specifically mentions Chapter 109A of Title 18. These references to Title 18 plainly illustrate that Congress was aware of the definitions contained in Chapter 109A and certainly was capable of incorporating them, but chose not to incorporate § 2246(3) into § 20911(5)(A)(i). *Cf. Bloate v. United States*, 559 U.S. 196, 211 n.13 (2010) (comparing subsections in a statute, noting that Congress included language referring to "preparation time" in one subsection but not in the subsection in question, and finding that this difference was intentional and the court was "bound to enforce only the language that Congress and the President enacted").

---

[1] Tennessee's 2012 definition of "sexual contact" included the intentional touching of the "primary genital area," whereas, Title 18's definition of "sexual contact" includes the intentional touching of the "genitalia." *Compare* Tenn. Code §§ 39-13-501(2) (2012), (6) *with* 18 U.S.C. § 2246(3).

6

In urging the court to hold that the generic federal definition of "sexual contact" incorporates the Title 18 definition of "sexual contact," Defendant cites *United States v. George*, 223 F. Supp. 3d 159, 165 (S.D.N.Y. 2016). (Doc. # 11 at p. 5-7). However, this case does not provide any explanation (much less analysis) as to why the district court incorporated § 2246(3) into § 20911(5)(A)(i). *See George*, 223 F. Supp. 3d at 161-62. In *United States v. Westerman*, on the other hand, the District Court of Montana considered whether Chapter 109A definitions should be incorporated into § 16911(5)(A)(i) and found that the court should instead use the ordinary meaning of the statutory words. *See United States v. Westerman*, No. CR 15-14-H-CCL, 2016 WL 843255, at *2-3 (D. Mont. Mar. 1, 2016) ("The Court concludes that the criminal offense of 'sexual battery' under K.S.A. 21-5505(a) categorically matches the SORNA definition of a 'criminal offense that has an element involving a sexual act or sexual contact with another.' 42 U.S.C. § 16911(5)(A)(i). Congress could have referred to and incorporated the Title 18, Chapter 109A definitions in defining sex offenses under § 16911(5)(A)(i), but it did not."). Consistent with the Government's position on this issue (Doc. # 12 at p. 8), this court agrees with the *Westerman* court's analysis and finds it persuasive.

Because SORNA does not expressly define "sexual contact," the court "interpret[s] that phrase using the normal tools of statutory interpretation," and "'[o]ur analysis begins with the language of the statute.'" *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1569 (2017) (quoting Leocal v. Ashcroft, 543 U.S. 1, 8 (2004)). Furthermore, "[t]he plain meaning of the statute controls unless the language is ambiguous or leads to absurd results." *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995); *see also Lopez v. Gonzales*, 549 U.S. 47, 53 (2006) (explaining that, when a statute does not define a term, the court uses the "everyday understanding" of that term "to see what Congress probably meant"). Consequently, the court

7

next considers the definition of "sexual contact" and whether sexual battery under Tennessee law qualifies as a "sex offense" under SORNA.

### C. As of the Date of Defendant's Conviction, Sexual Battery under Tenn. Code § 39-13-505 Qualified as a "Sex Offense" under SORNA

As the Eleventh Circuit recently noted, "Webster's first definition of 'contact' is 'union or junction of body surfaces: a touching or meeting.'" *United States v. Johnson*, 681 F. App'x 735, 740 (11th Cir. 2017) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 490 (1986)). Therefore, the common meaning of "sexual contact" includes a touching or meeting of a sexual nature.[2] Defendant argues that the use of "primary genital area" in Tennessee's definition of "sexual contact" is overly broad. (Doc. # 11, 14). However, using the common meaning of "sexual contact," the court finds that "the intentional touching of the victim's, the defendant's, or any other person's [primary genital area] if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification" -- as defined by Tenn. Code § 39-13-501 in 2012 -- falls squarely within the common meaning of the term "sexual contact." A ruling otherwise would frustrate the central purpose of SORNA "to protect the public from sex offenders" because it would undermine our "comprehensive national system for the registration of those offenders." 34 U.S.C. § 20901. Because Congress clearly intended for SORNA to apply to both federal and state sex offenders, a ruling in Defendant's favor would create an unintended loophole in SORNA for some state sex offenders. *See United States v. Rivers*, 588 F. App'x 905, 908 (11th Cir. 2014) ("[I]t [is] 'clear that SORNA was designed to create an interstate system to counteract the danger posed by sex offenders who slip through the cracks or exploit a weak state registration system . . . .'"). Nonetheless, it is unnecessary for the

---

[2] Tenn. Code § 39-13-501(6) requires that an intentional touching "be reasonably construed as being for the purpose of sexual arousal or gratification." Therefore, that statute undoubtedly includes a sexual element, and the court finds it is unnecessary to accept Defendant's invitation to explore whether sexual battery under Tennessee law is indeed "sexual."

8

court to explore the policy implications of such a ruling because the plain language of SORNA clearly applies to Tennessee's 2012 sexual battery statute. *See* 34 U.S.C. § 20911.

Defendant urges the court to reference other states' definitions of "sexual contact" in considering the generic definition of the term. (Doc. # 14 at p. 4). In comparing Tennessee's state code to that of other states, it is evident that Tennessee's definition of "sexual contact" is not an outlier. Other jurisdictions also use the term "primary genital area" to define "sexual contact" or "sexual battery." *See, e.g.*, Ga. Code § 16-6-22.1; 9 Gu. Code § 25.10; Mich. Comp. Laws § 750.520a; Minn. Stat. § 609.341; S.C. Code § 16-3-651; 14 V.I. Code § 1721. In fact, many state codes arguably define "sexual contact" even more broadly than the Tennessee Code. *See, e.g.*, Conn. Gen. Stat. § 53a-65 (using the term "genital area," rather than "primary genital area" to define "sexual contact"); N.J Stat. § 2C:14-1 (same). Ultimately, including "primary genital area" in a statutory definition of "sexual contact" does not run contrary the ordinary meaning of "sexual contact."

> D. **Alternatively, Even If the Court Incorporated the Title 18 Definition of "Sexual Contact," Tenn. Code § 39-13-505 (2012) Would Nevertheless Qualify as a "Sex Offense" under SORNA**

Title 18 of the United State Code defines "sexual contact" to include "the intentional touching . . . of the genitalia, anus, groin, breast, inner thigh, or buttocks," whereas "sexual contact" under Tennessee law includes the intentional touching of "the primary genital area, groin, inner thigh, buttock or breast." *Compare* 18 U.S.C. § 2246(3) *with* Tenn. Code § 39-13-501(2), (6) (2012). Defendant argues that, because the Tennessee definition uses the term "primary genital area," the Tennessee definition is broader than the definition contained in Title 18. (Doc. # 17). The court disagrees.

Congress's use of the disjunctive "or" and inclusion of the terms "groin" and "inner thigh" suggest that Congress intended Title 18's definition of "sexual contact" to encompass a larger area than merely the "genitalia." *See* 18 U.S.C. § 2246(3). The *Merriam-Webster Dictionary* defines "groin" as "the fold or depression marking the juncture of the lower abdomen and the inner part of the thigh." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 551 (11th ed. 2004). Similarly, the *American Heritage Dictionary of the English Language* defines "groin" as "the crease or hollow at the junction of the inner part of each thigh with the trunk, together with the adjacent region and often including the external genitals." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 798 (3d ed. 1992). To the extent that "primary genital area" is a more expansive term than "genitalia," the "primary genital area" is encompassed by Title 18's inclusion of the term "groin." In the court's view, the broadest term of description which should be considered "categorically" in relation to Defendant's Tennessee conviction, may be "groin," a term that appears in both statutes. As such, Tennessee's definition of "sexual contact" is a categorical match with Title 18's definition and, even if the court incorporated the Title 18 definition of "sexual contact" into SORNA (which it has not), sexual battery under Tennessee law would qualify as a "sex offense" under SORNA and the categorical approach.

**III.    Conclusion**

For the reasons stated above, the court concludes that, as of the date of Vineyard's conviction in 2012, sexual battery under Tenn. Code § 39-13-505 qualified as a "sex offense" under SORNA as it categorically matched the SORNA definition of "a criminal offense that has an element involving a sexual act or sexual contact with another."[3] 34 U.S.C. § 20911(5)(A)(i).

---

[3] To be clear, the court need not -- and does not -- decide whether the current definition of sexual battery under Tennessee law qualifies as a "sex offense" under SORNA.

Accordingly, Defendant's Motion is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 13, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE